UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| MORRIS WEATHERSPOON, # 471817, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:14-cv-734 |
| v. | ) ) | Honorable Robert Holmes Bell |
| BARBARA BIEN, et al., | ) ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) ) ) | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. §1983. Plaintiff is an inmate at the Marquette Branch Prison (MBP). (ECF No. 84). His complaint arises out of conditions of his confinement at the Muskegon Correctional Facility (MCF) during the period from October 1, 2013, through June 27, 2014. (Compl. ¶¶ 20-29, PageID.4-8). The defendants are Physician's Assistant Barbara Bien,[1] Kevin Murphy, D.D.S., Dental Hygienist Cathy Weaver, Shrrell Byard, D.D.S., James Melson, D.D.S., Nurse Michael Eastwold, Warden Sherry Burt, Health Unit Supervisor Tamerla Hamilton, Health Unit Manager Michael Wilkinson, and Corrections Officer Duane Noom.

Plaintiff alleges that defendants were deliberately indifferent to his serious dental and medical needs in violation of his rights under the Eighth Amendment's

_____

[1]Plaintiff spelled defendant Bien's last name as "Bein." (ECF No. 1, PageID.1). The case caption has been amended to reflect the correct spelling of defendant Bien's last name. Plaintiff also referred to Nurse Eastwold as "Eastfold." (*Id.* at 3, PageID.3). The spelling error regarding defendant Eastwold's last name has been corrected.

Cruel and Unusual Punishments Clause.[2]  Specifically, plaintiff alleges that on October 1 and 30, 2013, Physician's Assistant Bien failed to provide emergency care for plaintiff's left leg pain. (Compl. at ¶ 20, PageID.4).  On October 16, 2013, Dr. Murphy and Hygienist Weaver failed to provide teeth cleaning and dentures.  (*Id.* at ¶ 21, PageID.4).  On November 1, 2013, Health Unit Supervisor Hamilton and Warden Burt failed to obtain emergency medical care for plaintiff's left leg pain.  (*Id.* at ¶ 22, PageID.5).  On November 4, 2013, Warden Burt and Health Unit Manager Wilkinson failed to obtain emergency dental care for plaintiff's mouth discomfort and bleeding gums.  (*Id.* at ¶ 23, PageID.5).  On April 11, 2014, Dr. Byard failed to provide teeth cleaning and dentures.  (*Id.* at ¶ 25, PageID.6).  On April 25, 2014, Nurse Eastwold and Corrections Officer Noom failed to obtain emergency dental care.  (*Id.* at ¶ 27, PageID.7).  On May 30, 2014, Dr. Melson failed to extract tooth # 26 and failed to provide plaintiff with dentures.  (*Id.* at ¶ 28, PageID.7).  Plaintiff seeks an award of damages and injunctive relief.  (*Id.* at 13-16, PageID.13-16).

The matter is now before the Court on defendants' motions for summary judgment (ECF No. 36, 79), plaintiff's "motion" to deny the motion for summary judgment by defendants Murphy, Byard, Melson, Weaver, Eastwold, Burt, Hamilton, Wilkinson, and Noom (ECF No. 74), and plaintiff's motion for a preliminary injunction related to conditions of his current confinement at MBP (ECF No. 85).  For the reasons set forth herein, I recommend that plaintiff's claims for injunctive relief be dismissed

---

[2]All other claims were dismissed on September 10, 2014.  (ECF No. 5, 6).

as moot.  I recommend that plaintiff's motions be denied, that defendants' motions for summary judgment be granted, and that judgment be entered in defendants' favor on all plaintiff's claims for damages.

## Proposed Findings of Fact

The following facts are beyond genuine issue.  Plaintiff is an inmate in the custody of the Michigan Department of Corrections at the Marquette Branch Prison (MBP).  He was an inmate at the Muskegon Correctional Facility (MCF) during the period from October 1, 2013, through June 27, 2014.  The defendants plaintiff named in this lawsuit were health care providers or custody staff at MCF during this period: Physician's Assistant Barbara Bien, Kevin Murphy, D.D.S., Dental Hygienist Cathy Weaver, Shrrell Byard, D.D.S., James Melson, D.D.S., Nurse Michael Eastwold, Warden Sherry Burt, Health Unit Supervisor Tamerla Hamilton, Health Unit Manager Michael Wilkinson, and Corrections Officer Duane Noom.

Plaintiff was transferred to MCF in September 2013.  (Plf. Dep. at 9-10, ECF No. 37-5, PageID.304).  He received a comprehensive psychiatric examination before his arrival at MCF.  Mental health professionals noted that plaintiff has a history of mental illness, including hallucinations and paranoid delusions.  (ECF No. 1-3, PageID.54).  He has a long history of psychotic disorder.  "He remains suspicious and is guarded and hears voices and is paranoid, somatically preoccupied, and has poor judgment."  (ECF No. 1-3, PageID.58).  He has been prescribed Zyprexa and Tylenol to help with his psychosis and pain issues.  (*Id.*).

Plaintiff has received extensive dental and medical care during his incarceration, including the period of confinement at MCF at issue in this lawsuit. (ECF No. 40, PageID.334-55; ECF No. 41, PageID.357; ECF No. 76-1, PageID.530-97; ECF No. 81, PageID.639-76;).

On October 1, 2013, plaintiff was examined by Physician's Assistant Bien. Plaintiff complained of left leg pain. He believed that the bump or "knot" on his left femur was getting larger. The x-rays that had been taken of this same area in 2012, showed no acute osseous changes. The bump was interpreted as a likely old healed trauma. (ECF No. 76-1, PageID.556, 569). When Physician's Assistant Bien examined plaintiff on October 1, 2013, she found that plaintiff had no muscle weakness. He had good strength and a normal range of motion. His straight leg raising tests were negative. His balance and gait remained intact. Physician's Assistant Bien ordered x-rays of plaintiff's femur and back to determine if there had been change in mass. (ECF No. 81, PageID.651-53). The results of plaintiff's lumbar spine x-ray were "[u]nremarkable." The x-rays of plaintiff's left femur showed no fracture or any other acute osseous abnormalities. The bump on the femur appeared to be a small, benign lesion such as an exostosis, possibly caused by an old healed trauma. (ECF No. 81, PageID.658).

Plaintiff saw a number of medical care providers in the weeks that followed. (ECF No. 81, PageID.659-68). Among other things, plaintiff kept demanding that a "mammogram" be taken of his left leg. (ECF No. 81, PageID.665, 668). When plaintiff saw Physician's Assistant Bien on October 30, 2013, he expressed his disagreement

-4-

with the medical diagnosis that the bump he felt on his leg was bone.  Plaintiff referred to the bump as an abscess/tumor and demanded more tests and that it be fixed immediately.  Plaintiff was in no apparent distress.  He retained good strength and a normal range of motion in all extremities.  Physician's Assistant Bien advised plaintiff to "continue with Tylenol as needed along with stretching and strengthening exercises."  (ECF No. 81, PageID.669-70).  Plaintiff continued to receive medical care throughout November 2013.  (ECF No. 81, PageID.671-76).

Kevin Murphy has a doctorate in dental surgery and operated a private dental practice for years before he began providing dental care to MDOC prisoners in 2002.  Dr. Murphy provided plaintiff with dental care on a number of occasions during plaintiff's incarceration at MCF.  (Murphy Aff. ¶¶ 1-3, ECF No. 45, PageID.368-69; ECF No. 40, PageID.350-54).  On October 16, 2013, Dr. Murphy examined plaintiff.  (Murphy Aff. ¶ 3, PageID.369; Plf. Dep. at 16, PageID.305; ECF No. 40, PageID.350).  He found that plaintiff's tooth # 26 had class I mobility and moderate bone loss.  Dr. Murphy asked plaintiff if the tooth was causing enough discomfort that he wanted it removed.  Plaintiff responded that it was not. (Murphy Aff. ¶ 3, PageID.369).  Plaintiff requested a "prophy" which is also known as a prophylaxis or dental cleaning and prosthetic denture.  Plaintiff did not medically require a cleaning or prosthetic on October 16, 2013.  He did not require any immediate care and Dr. Murphy assured him that he was on the lists for a cleaning and to receive a prosthetic. (Murphy Aff. ¶¶ 4-5, PageID .369-70).  Dr. Murphy continued to provide plaintiff with dental care after the

period at issue in this lawsuit. (Murphy Aff. ¶ 6, PageID.370; ECF No. 40, PageID.354).

Cathy Weaver is a registered dental hygienist. As a hygienist, she does not prescribe courses of treatment. That is a dentist's job. (Weaver Aff. ¶¶ 1-5, ECF No. 47, PageID.377-78). Apparently, plaintiff now believes that Dr. Murphy should have extracted tooth # 26 on October 16, 2013, and that Murphy and Weaver should have done something more to stop the tooth problems that he attributes to "powerful antipsychotic drugs." (Plf. Decl. at 1-3, ¶¶ 3-8, ECF No. 75, PageID.511-13).[3]

On October 10, 2013, MCF's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. MCF-13-10-01471-12D2. In this grievance, plaintiff complained that on October 1, 2013, Physician's Assistant Bien misdiagnosed his left femur condition and failed to provide "correct treatment." The Step I response is dated November 1, 2013. Health Unit Supervisor Tamerla Hamilton was the author of the Step I response and Health Unit Manager Michael Wilkinson reviewed the response. (ECF No. 37-2, PageID.298-99). Among other things, the response noted that plaintiff had received significant medical attention in October 2013, for bump on

---

[3] I have considered all the declarations that plaintiff filed in response to defendants' motions. However, "verified" arguments and legal conclusions are not evidence. Legal conclusions, whether asserted in an affidavit, declaration, or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Medison Am. Inc. v. Preferred Med. Sys., Inc.*, 357 F. App'x 656, 662 (6th Cir. 2009); *see also Stine v. State Farm Fire & Cas. Co.*, 428 F. App'x 549, 550 (6th Cir. 2011) (A "conclusory affidavit bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment."); *Houston v. McDaniels*, No. 1:12-cv-299, 2014 WL 1493402, at *2 n.2 (W.D. Mich. Apr. 16, 2014).

his left leg, including x-rays.  Plaintiff's grievance was denied at Step I. (ECF No. 37-2, PageID.299).

Plaintiff disagrees with the Step I response.  (Plf. Dep. at 12-14, PageID.304-05; ECF No. 37-2, PageID.296; Plf. Decl. at 2, ¶ 4, ECF No. 69, PageID.495).  Plaintiff believes that the discomfort in his left femur is attributable to "multiple powerful antipsychotic drugs" (Plf. Decl. at 2, ¶ 4, PageID.495), but he has not presented any medical opinions or evidence supporting this assertion.

The Step II grievance respondent is designated by policy.  The regional health administrator or designee is the Step II respondent for grievances regarding health care issues, not the warden.  (*See* ECF No. 37-10, PageID.324).  Thus, Warden Burt did not provide the Step II response to plaintiff's grievance.[4]  (ECF No. 37-2, PageID.297).  Plaintiff indicated that his claims against Warden Burt and Health Unit Manager Wilkinson were based on their supervisory positions and handling of his grievances. (Plf. Dep at 12-15, PageID.304-05).

On October 23, 2013, plaintiff filed a grievance and MCF's grievance coordinator assigned it Grievance No. MCF-13-10-1470-12a.  In this grievance, plaintiff complained that Dr. Murphy failed to provide him with adequate dental treatment on October 16, 2013.  (ECF No. 37-2, PageID.289).  Plaintiff indicates that he related the perceived

---

[4]Plaintiff states that "Defendant Burt denied [his] Step II grievance" (Plf. Decl. at 2, ¶ 4, ECF No. 67, PageID.489), but he has not identified a specific grievance, nor supplied any coherent explanation why the warden would have filed a Step II response to any grievance regarding health care issues.  (*See* Policy Directive 03.02.130, ¶¶ DD(1) and (2), ECF No. 37-10, PageID.324).

inadequacies in Dr. Murphy's treatment to Health Unit Manager Wilkinson during a grievance interview regarding this grievance that Wilkinson conducted on November 4, 2013. In addition, plaintiff described the inadequacies that he perceived in the medical treatment he had received for the bump on his left femur. Plaintiff explained how he believed that his problems with his teeth and the discomfort in his left femur had been caused by being "forcibly injected with multiple antipsychotic drugs against his will[.]" (Plf. Decl. at 2-3, ¶¶ 4-12, ECF No. 72, PageID.504-05).

Defendant Hamilton was the author of the Step I response to Grievance No. MCF-13-10-1470-12a and defendant Wilkinson was the reviewer. The Step I response noted that plaintiff had been seen by the dentist on October 16, 2013, and that he had determined that plaintiff did not have any condition warranting urgent/emergent treatment. (ECF No. 37-2, PageID.288). Plaintiff pursued an appeal to Step II of the grievance process. The Step II response noted that plaintiff had received a dental evaluation on October 16, 2013, and that his disagreement with the plan of care did not constitute a denial of treatment. Warden Burt was not the author of the Step II response. (ECF No. 37-2, PageID.285-86).

On April 11, 2014, Dr. Byard examined plaintiff. He reviewed plaintiff's health history, performed an oral cancer screen, and noted that plaintiff had fair oral hygiene. He found no dental condition requiring emergency treatment. (ECF No. 40, PageID.351).

Michael Eastwold is a licenced practical nurse (LPN). He does not schedule or cancel prisoner appointments. On April 25, 2014, he was working the medication line

at MCF healthcare.  In that capacity, he would not have treated plaintiff.  Plaintiff did not indicate that he needed any form of emergency care.  If plaintiff had handed him a detail regarding a health care or dental care appointment, he would have notified a custody officer and that officer would inform the care provider that a prisoner was waiting to be seen.  (Eastwold Aff. ¶¶ 1-5, ECF No. 44, PageID.365-66; ECF No. 41, PageID.357).

Corrections Officer Noom is a member of MCF's custody staff.  His duties did not include scheduling or canceling medical or dental appointments.  Noom was responsible for supervising inmates in the health service waiting area.  He was not permitted to inquire as to why a prisoner is waiting for an appointment, so he would not be aware of a particular prisoner's health status.  Officer Noom's job was limited to notifying a health care provider that a prisoner was waiting.  Plaintiff did not indicate to defendant Noom that he required emergency care.  If plaintiff had done so, Noom would have contacted a health care or medical care provider.  (Noom Aff. ¶¶ 1-5, ECF No. 43, PageID.362-63).  Plaintiff states that he had an appointment for teeth cleaning on April 25, 2013, and that the appointment was rescheduled to early May 2013.  He attributes a delay of approximately two weeks in receiving this cleaning to Noom and Eastwold's neglect in failure to provide Weaver with timely notice that plaintiff was in the waiting area.  (Plf. Decl. at 2-3, ¶¶ 4-8, ECF No. 71, PageID.501-02).

James Melson holds two doctorate degrees, including his doctorate in dental surgery from the University of Michigan School of Dentistry.  On May 5, 2014,

plaintiff sought treatment from Dr. Melson for complaints of pain, swelling, and mobility to teeth # 26, 27, and 28.  Plaintiff did not claim any deficiency in the dental care that he received on May 5, 2014.[5]  Plaintiff returned to Dr. Melson on May 30, 2014.   In response to plaintiff's complaints of discomfort, Dr. Melson dispensed Ibuprofen and Prescribed Penicillin.  The x-rays taken on that date indicated that the teeth in question needed to be removed to prevent further pain and/or risk of infection. Plaintiff had advanced periodontal disease with advanced bone loss.  He did not have any urgent need for dentures or teeth cleaning.  An extraction was scheduled.  Plaintiff believes that Dr. Melson should have performed the extraction on May 30, 2013, and that the Penicillin that Dr. Melson prescribed "was not required."

On June 18, 2014, Dr. Byard removed the teeth on June 18, 2014, without complication.  Plaintiff persists in his belief that his dental problems are attributable to the "multiple powerful antipsychotic drugs." (Melson Aff. ¶¶ 1-5, ECF No. 46, PageID.373-75; ECF No. 40, PageID.352-53; Plf. Decl. at 2, ¶¶ 4-7, ECF No. 68, PageID.492-493; Plf. Decl. at 2, ¶ 5, ECF No. 70, PageID.498).

On July 9, 2014, plaintiff filed his complaint.  (ECF No. 1).

## Discussion

---

[5]Plaintiff states on "information and belief" that Dr. Melson did not examine him or provide dental treatment on May 5, 2014.  (Plf. Decl. at 2, ¶ 3, ECF No. 70, PageID.498).  "Statements made on information and belief, however, are insufficient to create an issue of fact necessary to defeat summary judgment." *Marcum v. Sevier County, Tenn.*, No. 3:13-cv-682, 2015 WL 1912697, at * 3 (E.D. Tenn. Apr. 27, 2015); *see Kiplinger v. Selene Fin., LP*, No. 1:15-cv-105, 2015 WL 9255564, at * 3 (W.D. Mich. Dec. 18, 2015) (collecting cases).

A.    **Requests for Injunctive Relief**

    1.    Mootness

Plaintiff's interactions with defendants forming the basis of this lawsuit occurred at the Muskegon Correctional Facility (MCF) during the period from October 1, 2013, through June 27, 2014.   Plaintiff is currently an inmate housed in administrative segregation at the Marquette Branch Prison (MBP).  (ECF No. 85 at 1, PageID.687).  Plaintiff's claims for injunctive relief against defendants are moot.  *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

    2.    Motion for Transfer

On January 25, 2016, plaintiff filed a motion seeking an injunction asking the Court to order plaintiff's transfer back to MCF from his current confinement in administrative segregation at MBP.  (ECF No. 85).  Plaintiff states that he is suffering from side effects from the antipsychotic drugs being administered at MBP.  (*Id.* at 1, PageID.687).

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his [ ] burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).  The four factors this court is to consider are well established, *see Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000), and the United States Court of Appeals for the Sixth Circuit reviews decisions granting or denying motions for preliminary injunctions under an abuse-of-discretion standard.  *See City of Pontiac Retired*

*Employees Ass'n v. Schimmel,* 751 F.3d 427, 430 (6th Cir. 2014*); Tennessee Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009).

Plaintiff misperceives the purpose of a preliminary injunction. It is not designed to protect him from the adverse consequences of incorrigible behavior or to provide him the most comfortable confinement possible in a maximum security prison. The purpose of such relief "is simply to preserve the status quo." *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004); *see University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

The availability of a preliminary injunction is inextricably intertwined with the merits of the underlying claim. For this reason, one of the principal factors in determining a plaintiff's entitlement to relief is the likelihood that the plaintiff will succeed on the merits of his underlying claims. *See United States v. Contents of Accounts*, 629 F.3d 601, 606 (6th Cir. 2011). Hence, a party seeking a preliminary injunction must show a relationship between the irreparable injury claimed in the motion and the claims pending in the complaint. *See Colvin v. Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010). A motion for a preliminary injunction is not the means by which a plaintiff already in court on one claim can seek redress for all other conditions of confinement that he finds actionable. Plaintiff's motion is unrelated to any underlying claim pending in this case. *See Ball v. Famiglio*, 396 F. App'x 836, 837 (3d Cir. 2010) (plaintiff not entitled to preliminary injunction on claims not pending in complaint); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (same); *see also*

*Dunbar v. Prelesnik*, No. 1:13-cv-1100, 2015 WL 1393376, at * 4 (W.D. Mich. Mar. 25, 2015).

None of the four factors weighs in favor of granting the extraordinary relief plaintiff requests. He has not shown a strong likelihood of success on the merits of his claims. Plaintiff has not shown that an injunction is necessary to prevent irreparable harm. He is not entitled to be housed in the prison or at the security classification of his choice. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). The public interest would not be served by granting the extraordinary relief plaintiff requests, and entry of such an order would constitute an unwarranted intrusion into the State's operation of its prisons. I recommend that plaintiff's motion for a preliminary injunction (ECF No. 85) be denied.

## B.  Defendants' Motion for Summary Judgment

Plaintiff alleges that defendants violated his Eighth Amendment rights under the Cruel and Unusual Punishments Clause. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to

-13-

provide immediate medical attention.  *Westlake v. Lucas*, 537 F.2d 857, 860 n. 4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard.  Under Wilson, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298.  No reasonable trier of fact could find in plaintiff's favor on the subjective component of Eighth Amendment claims against defendants.  The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness.

A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837.  The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care. Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish.  Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

-14-

*Miller*, 408 F.3d at 813 (citations and quotations omitted).  Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims which sound in state tort law.  *See Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011); *Westlake*, 537 F.2d 860 n. 5; *Reed v. Speck*, 508 F. App'x 415, 419 (6th Cir. 2012) ("The subjective component is intended 'to prevent the constitutionalization of medical malpractice claims.' ") (quoting *Dominguez v. Corr. Med. Servs.*, 555 F.3d at 550)); *see also Stevens v. Gooch*, 615 F. App'x 355, 360 (6th Cir. 2015).

Plaintiff has not presented evidence sufficient to support the subjective component of an Eighth Amendment claim for deliberate indifference to serious medical needs against the professional medical and dental care provider defendants. The record shows that defendants treated plaintiff's conditions on an ongoing basis and displayed no deliberate indifference.  The unrefuted medical record shows that plaintiff received virtually constant medical and dental attention, at a level exceeding that available to most free citizens.  The claims that defendants "should have" provided him with "different" medical and dental care are at best, state-law malpractice claims. Plaintiff's disagreement with defendants' diagnosis and treatment falls far short of supporting an Eighth Amendment claim.  *See Kosloski v. Dunlap*, 347 F. App'x 177, 180 (6th Cir. 2009); *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 357 (6th Cir. 2006); *see also Weatherspoon v. Lnu*, No. 14-cv-12789, 2015 WL 5216580, at * 2-4 (E.D. Mich. Aug. 31, 2015); *Weatherspoon v. Toner*, No. 2:13-cv-254, 2014 WL 4385432, at *

2-3, 11-14 (W.D. Mich. Sept. 3, 2014). The warden and other defendants who are not

medical or dental professionals were entitled to rely on the judgment of medical and

dental professionals regarding the appropriate course of treatment.[6] *See McGee v.*

*Adams*, 721 F.3d 474, 483 (7th Cir. 2013); *see also Fantone v. Herbik*, 528 F. App'x 123,

128 (3d Cir. 2013); *Phillips v. Tiona*, 508 F. App'x 737, 744 (10th Cir.2013); *Peacher v.*

*Finnan*, No. 1:11-cv-601, 2014 WL 4908393, at * 4-5 (S.D. Ind. Sept. 30, 2014).

## Recommended Disposition

For the foregoing reasons, I recommend that plaintiff's claims for injunctive

relief be dismissed as moot. I recommend that plaintiff's motions (ECF No. 74, 85) be

denied. I recommend that defendants' motions for summary judgment (ECF No. 36,

79) be granted, and that judgment be entered in defendants' favor on all plaintiff's

claims for damages.

Dated: February 2, 2016                  /s/ Phillip J. Green
                                         United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served
within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R.
CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH.
LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver
of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v.*
*Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v.*
*Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See*
*McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier*
*Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).

---

[6]It is not necessary to address the alternative grounds on which the moving
defendants claim entitlement to summary judgment.